The greater weight of the medical evidence, in light of the Deputy Commissioner's evaluation of the credibility of information received by the physicians that influenced their testimony, indicates that the plaintiff's compensable accident caused a temporary exacerbation of her serious pre-existing back problem, without additional permanent partial disability or continuing consequences beyond those for which she has received benefits, with the exception of the initial evaluation and rating by Dr. Maultsby, which plaintiff was due as a second opinion pursuant to N.C. Gen. Stat. § 97-27(b).
The term "exacerbate" is used in compensation law, as in common usage, to mean "to increase the severity . . . of (disease, ill feeling, etc.); aggravate — "synonymous with "intensify, inflame, worsen" — and thus encompasses the deterioration of a pre-existing condition, whether by "aggravation", "acceleration", or "precipitation". Random House Unabridged Dictionary, 2d Ed. (1993); see, e.g., Thompson v. Burlington Industries, 59 N.C. App. 539,542, 297 S.E.2d 122 (1982); Larson, The Law of Workers'Compensation, §§ 13.11(g) and 41.63. Exacerbations are compensable, but only as they "contribute in some reasonable degree to . . . current disability". Hoyle v. Carolina AssociatedMills, 122 N.C. App. 462, 467, ___ S.E.2d ___ (1996); Carter v.Northern Telecom, I.C. No. 278498, 22 September 1995, aff'd, N.C. App. No. COA96-46, 6 August 1996 (rept'd per R.Apps.Pro. 30(e)).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, with minor modifications, as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at the relevant time.
2. Aetna Casualty and Surety Company was the carrier on the risk.
3. On October 23, 1991, the plaintiff sustained a compensable injury to her lower back for which the plaintiff received temporary total disability compensation from October 24, 1991 through September 2, 1992 at a weekly compensation rate of $250.00, pursuant to the Form 21 agreement.
4. The issues for resolution are:
 a. Whether the plaintiff is entitled to additional temporary total disability compensation.
 b. Whether the compensable injury caused a psychological injury or condition, and if so, to what compensation is she entitled.
 c. Whether the plaintiff is entitled to a change of physician.
 d. Whether medical treatment by Dr. Maultsby and Dr. Garrett should be paid by defendant-carrier.
 e. Whether the plaintiff is entitled to vocational rehabilitation.
 f. Whether defendant-carrier should pay for the opinion letter of Dr. Brown which was requested by plaintiff's counsel.
 g. Whether plaintiff is entitled to permanent partial disability compensation.
 h. Whether plaintiff's claim is barred under N.C. Gen. Stat. § 97-32.
* * * * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 34 year old female who had undergone a lumbar laminectomy by Dr. Bell in 1987 as a result of a ruptured disk caused by a pregnancy. Following the surgery, the plaintiff had some improvement of her pain but no resolution of the back and leg pain. In February of 1988, the plaintiff left a job with Popi Temporary Services due to back pain from lifting. The plaintiff was seen by Dr. Kelly on February 8, 1990 and February 28, 1990 due to low back pain and pain radiating into the left hip and thigh. The plaintiff was referred to Prybylo-Ess for 5 sessions of physical therapy in March of 1990, due to back pain. On February 7, 1991, the plaintiff returned to Dr. Bell for complaints of continued back pain.
2. On October 23, 1991, the plaintiff sustained a compensable injury to her back while lifting a carton of bleach to unload it from a tractor-trailer. The plaintiff was seen at Kernersville Immediate Care by Dr. Lowdermilk, who diagnosed her as having a low back strain. Dr. Lowdermilk prescribed heat, bed rest, muscle relaxers, anti-inflammatory medicine, and narcotic analgesics. The plaintiff returned to Dr. Keller at Kernersville Immediate Care on October 27, 1991 with continued complaints of back pain. Dr. Keller referred the plaintiff to Dr. William Brown of Carolina Neurosurgical Associates.
3. On November 11, 1991, Dr. Brown examined the plaintiff, during which she related a history of having been in a 1967 automobile accident in which she was pinned under the dashboard and paralyzed for 2-3 hours, and of a 1987 lumbar laminectomy, Dr. Brown's initial impression was back and leg pain secondary to lumbar disc disease.
4. The plaintiff was next referred to William Welsch of Comprehensive Medical Rehabilitation Center for evaluation for work hardening. However, she was not admitted to the program due to lack of sufficient amount of incentive for improvement. The plaintiff related a history of a 1987 surgery following an automobile accident, and she stated that the back "hasn't been right since."
5. Dr. Brown referred the plaintiff to Dr. Charles Branch upon insistence of the plaintiff in December of 1991. On December 6, 1991, Dr. Branch, a neurosurgeon, concluded the plaintiff had a lumbar strain superimposed on the scar tissue from her previous problems.
6. The plaintiff underwent a myelogram and CT Scan on or about December 9, 1991, which were within normal limits. A slight bulge was noted at L5-Sl, but was not significant. On January 2, 1992, Dr. Brown concluded the plaintiff was experiencing back pain secondary to lumbar strain and some lumbar disc disease. Dr. Brown found the plaintiff had reached maximum medical improvement on January 21, 1992.
7. The plaintiff returned to Dr. Branch on February 25, 1992, at which time he informed her that she was at maximum medical improvement and was able to return to work with restrictions of 30-40 pounds, pushing, and to avoid prolonged bending or squatting.
8. On April 28, 1992, Aetna referred the plaintiff to Dr. David A. Compton, an occupational Medicine Specialist, at Health 
Hygiene, Inc., in Greensboro. The plaintiff related a history to Dr. Compton of having been asymptomatic since the 1987 surgery. Dr. Compton noted that plaintiff's range of motion was tremendously abnormal, as she could not flex the lumbar spine more than 10 degrees when standing, but could straight leg raise when sitting 50 to 60 degrees. The plaintiff presented at Dr. Compton's office, walking with the aid of a cane to support her right leg. Dr. Compton discussed this with the plaintiff and advised her that she did not need to use the cane, and that if she was experiencing left leg pain, she was not using the cane appropriately by using it to support her right leg.
9. The plaintiff returned to Dr. Compton on May 12, 1992, the plaintiff drove herself to Greensboro from Walkertown in her 4-wheel drive truck. Dr. Compton observed the plaintiff get out of the truck and walk across the parking lot in a normal gait. When the plaintiff approached Dr. Compton's office, she shifted from a normal, "pain-free" walk, to a slow, deliberate and struggling walk. The plaintiff complained to Dr. Compton that she was unable to drive although the doctor personally observed her driving the truck to his office. The plaintiff registered a complaint regarding diarrhea from Relafen, the anti-inflammatory drug, and therefore Dr. Compton prescribed Ansaid. The plaintiff also complained of being drowsy and knocked-out from taking Prozac, an antidepressant, and Dr. Compton discontinued its use.
10. Dr. Compton referred the plaintiff to the High Point Pain Management Center (PMC), where it was noted that plaintiff participated only to the degree required, putting forth no extra effort toward recovery.
11. The plaintiff related to Dr. Suzanne Keddie, director of PMC, that her whole left leg had been numb for 5 years, since the laminectomy. However, the plaintiff denied any history of back pain from the date of the surgery until the October 1991 injury at Family Dollar.
12. The plaintiff completed the PMC program on August 4, 1992, and Dr. Keddie opined that plaintiff was at maximum medical improvement and would not benefit from further work hardening, invasive procedures or medication trials.
13. On August 7, 1992, Dr. Compton opined that the plaintiff reached maximum medical improvement, has a 9% rating as a result of the 1987 surgery and that she was able to return to work at a modified cashier job. Dr. Compton did not note any trigger points in the lumbar spine, and found no evidence of myofascial pain or muscle spasm. Dr. Compton opined that the plaintiff's chronic pain disorder was not related to the injury on October 23, 1991.
14. Defendant-employer advised the plaintiff by letter on August 18, 1992 that a light duty cashier job within her restrictions would be available for her on September 3, 1992.
15. On September 1, 1992, the plaintiff went to Dr. Garrett, a family practitioner, regarding complaints of back pain.
16. The plaintiff worked for 4 hours on September 2, 1992, and was provided with a hydraulic chair and instructed not to lift anything over 10 pounds.
17. The plaintiff presented at Dr. Garrett's office using a cane on September 4, 1992. She complained of back and left leg pain. On September 16, 1992, Dr. Garrett had to go out to plaintiff's car to see her, as she complained of being unable to walk into his office.
18. On October 12, 1992, the plaintiff was referred by her attorney to Dr. Maultsby in Greensboro, and Aetna allowed one visit for a second opinion. At that time, Dr. Maultsby found that the plaintiff had not reached maximum medical improvement and that plaintiff was unable to return to work. Dr. Maultsby disagreed with the opinions of Drs. Brown, Branch, Compton, and Keddie.
19. The plaintiff was seen by Dr. Brown on May 5, 1993, he reiterated that the plaintiff had reached maximum medical improvement and that there was no additional therapy that he could recommend.
20. Prior to September 2, 1992, the exacerbation of plaintiff's back condition from the compensable accident had resolved and subsided, without causing any residual impairment, and any disability she suffered thereafter resulted from pre-existing and non-work related causes.
21. In light of the contradictory evidence and the Deputy Commissioner's evaluation of the witnesses' credibility, the undersigned find that the plaintiff has failed to show by the greater weight of the evidence that additional compensation is due. Plaintiff's testimony regarding her lack of back pain before the October, 1991 injury was deemed not credible. The plaintiff's demeanor at the hearing, as observed and described by the Deputy Commissioner — who was in a position to observe plaintiff firsthand — further contradicts the complaints plaintiff made regarding her back and its current limitations. The plaintiff sat in excess of two hours in the witness chair at the hearing and during that time she did not change positions, stand up or take a break. This is in direct conflict with her statements regarding inability to work at a 4 hour per day job.
* * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff was entitled to temporary total disability benefits and medical compensation related to the injury of October 23, 1991. N.C. Gen. Stat. §§ 97-29 and 97-25. The plaintiff has failed to carry the burden of proof to establish that the chronic low back pain syndrome, and any disability after September 2, 1992 was caused by the compensable injury of October 23, 1991. The burden of proof is on the plaintiff to show that the injury complained of resulted from the accident in question, Henry v. A.C. Lawrence Co.,231 N.C. 427, 57 S.E.2d 760 (1950); Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). The Industrial Commission is the sole judge of the truthfulness and credibility of the witness. Priddy v. Blue Bird Cab Co., 9 N.C. App. 291,176 S.E.2d 26 (1970).
2. The plaintiff is not entitled to any temporary total disability compensation beyond that already paid through September 2, 1992 pursuant to a Form 21 agreement, or to any permanent partial disability benefits, as a result of the back strain of October 23, 1991.
3. As of the date of the hearing, plaintiff was not entitled to further medical compensation as a result of the back strain of October 23, 1991. Except for the second opinion evaluation by Dr. Maultsby, defendants are not liable for any treatment provided to the plaintiff by Drs. Maultsby or Garrett.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay the medical bills for the October 12, 1992 examination by Dr. Maultsby. Otherwise, plaintiff's claim for additional benefits must be, and hereby is, DENIED.
2. Each side shall bear its own costs, except that defendants shall pay expert witness fees in amount of $280.00 to Dr. John B. Garrett, Sr., and $140.00 to Dr. William S. Kelly.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ COY M. VANCE COMMISSIONER
JRW/jss/md